

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DANIELLE L. KRAMER O'MARA,

    Plaintiff

v.　　　　　　　　　　　　　　　Case No: 2:16cv489

VIRGINIA DEPARTMENT OF CORRECTIONS,

  Serve:

    **Defendants**

## COMPLAINT

COMES NOW the Plaintiff, Danielle L. Kramer O'Mara ("Plaintiff"), by counsel, and as and for her Complaint against the Defendant, Virginia Department of Corrections ("Defendant" or "DOC") states as follows:

### Parties

1. Plaintiff is a natural person and a resident of the Commonwealth of Virginia and has resided in the City of Suffolk, Virginia at all relevant times.

2. DOC is an agency of the Commonwealth of Virginia charged with, *inter alia*, overseeing and executing Virginia's probation and parole system for criminal convicts and maintains a probation and parole office at 425 W. Washington St. in the City of Suffolk, Virginia (the "Office").

### Jurisdiction and Venue

3. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United

States, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-7 and 2000e, *et seq.*

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant conducts business within this judicial district and division and the events complained of herein took place within this judicial district and division.

## Exhaustion of Administrative Remedies

5. Prior to instituting this civil action, Plaintiff timely filed an administrative claim with the Norfolk office of the Equal Employment Opportunity Commission ("EEOC").

6. On or about June 29, 2016, the EEOC mailed a "right to sue" letter to Plaintiff after failing to resolve the Plaintiff's administrative claim, with Plaintiff receiving it in the ensuing days. *See* Exhibit A. Plaintiff has filed the instant civil action within ninety (90) days of her receipt of notice authorizing her to file this civil action.

## Facts and Background

7. Plaintiff began employment with DOC at the Office as a Probation and Parole Gang Specialist on or about January 25, 2016.

8. At all relevant times, Grant Knight ("Knight") was the Parole and Probation Chief at the Office and had supervisory, hiring and firing power over Plaintiff, as vested in him by Defendant and was acting in the scope and course of his employment by DOC and as an employee, agent and servant of DOC.

9. During the course of her employment with DOC, Knight would frequently make unwanted comments to Plaintiff about her appearance and body and would make unwanted physical contact with her by placing his hand on her lower back if Plaintiff was getting into a car.

10. Approximately three weeks after starting work, Knight singled Plaintiff out from her co-workers and stated that she should not wear certain work-suitable dress pants similar to those worn by her co-workers (male and female) because it was particularly "distracting" when Plaintiff would wear them.

11. During her employment, Defendant would additionally treat Plaintiff differently from her male colleagues with regard to the terms and conditions of her job such as by not allowing Plaintiff to work with police officers or enter the homes of probationers and/or parolees.

12. On or about March 10, 2016, while meeting with a probationer at the Office as a part of her duties, the probationer made threats against Plaintiff.

13. When Plaintiff indicated to other employees, including a deputy chief, of the DOC at the Office that she wished to file a complaint with the Suffolk Police Department against the probationer, she was strongly discouraged from doing so and was told that it would not help Plaintiff's standing at the Office.

14. Upon information and belief, the other DOC employees at the office were motivated by seeking to protect the Office's offender rehabilitation rates, which would have been adversely affected by the filing of a criminal complaint against a probationer.

15. Plaintiff had the legal right to speak to the Suffolk Police Department about the threats she had received.

16. Plaintiff exercised her legal right and traveled to the Suffolk Police Department to report the threats she had received.

17. After her shift ended and as she was driving home after speaking with the police, Knight called Plaintiff to come back to the Office for a meeting with him and a deputy chief.

18. During the meeting, Plaintiff was accused of breaching confidentiality and of cursing at the probationer who had threatened her, which Plaintiff denied and denies.

19. Knight demanded that Plaintiff write, sign and issue a sworn violation report regarding her incident with the probationer stating that she cursed at the probationer, which Plaintiff refused to do on grounds that it would constitute perjury.

20. The following day Knight entered Plaintiff's office and closed the door. When Plaintiff told him that she was not comfortable with the way in which the previous evening's meeting had transpired, Knight purported to apologize.

21. After he apologized, Knight told Plaintiff that he had gone through "a lot of trouble" to hire her to work at the Office and that he had "special feelings" for her.

22. Knight then placed his hand on top of Plaintiff's hand, which was on her desk, and stated to her that "I hope we can work something out to keep you here."

23. Plaintiff immediately stated to Knight that both she and he were married, at which point Knight withdrew his hand and said "that's unfortunate; I was hoping we could work something out." He then left Plaintiff's office.

24. Upon information and belief, Knight had used his authority at the Office to make similar sexual advances to at least one other female employee previously.

25. Plaintiff did not work at the Office for the next few days due to the intervening weekend and the following three days of pre-planned and approved days off.

26. When Plaintiff returned to the Office on March 17, 2016, the DOC, acting by and through Knight, terminated for the stated reason of a "loss of trust," allegedly based upon the accusations made against her during the meeting on March 10, 2016.

27. The stated reason(s) for Plaintiff's termination was pretextual and not the true reason for the adverse employment action taken against her and was designed to hide discriminatory animus.

### Count I—*Quid Pro Quo* Sexual Harassment
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

28. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Seven as if set out in full herein.

29. Defendant has discriminated against Plaintiff by creating and maintaining a hostile work environment where an ongoing, severe or pervasive pattern of sexual harassment persists in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

30. Defendant's Probation and Parole Chief, Grant, subjected Plaintiff to *quid pro quo* sexual harassment within said hostile work environment.

31. Grant used his authority throughout Plaintiff's employment to make unwanted comments to her regarding her appearance and body, to characterize her wearing similar dress pants to those worn by her male and female colleagues as being a "distraction," and in unwantedly touching Plaintiff both on her lower back and by placing his hand over hers.

32. Grant further used his authority to make Plaintiff's assent and submission to his sexual advances a condition of her maintaining her employment with Defendant.

33. When Plaintiff refused and rebuffed Grant's sexual advances, the DOC terminated her, by and through its supervisory employee, Grant.

34. Defendant's *quid pro quo* sexual harassment of Plaintiff altered the conditions of her employment.

35. Defendant's conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

5

36. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered monetary and non-monetary damages including loss of back pay, loss of front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

### Count II—Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

37. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Seven as if set out in full herein.

38. On or about March 11, 2016, Grant, acting in his capacity as a supervisory employee of Defendant, used his authority to make Plaintiff's assent and submission to his sexual advances a condition of her maintaining her employment with Defendant.

39. Plaintiff immediately rebuffed Grant's sexual advances, which Grant acknowledged verbally. Plaintiff's opposition to Grant's sexual advances constitutes protected activity.

40. When Plaintiff returned to work on her next scheduled day, Defendant, by and through Grant, terminated her for pretextual reasons allegedly arising prior to Plaintiff's refusal of Grant's advances.

41. Defendant, by and through Grant, terminated Plaintiff in retaliation for her not assenting to and accepting his intervening sexual advances, which was a protected activity.

42. Defendant's conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

44. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered monetary and non-monetary damages including loss of back pay, loss of front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

### Count III—Gender Discrimination in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

44. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Seven as if set out in full herein.

45. Defendant discriminated against Plaintiff by subjecting her to disparate treatment as well as terms and conditions of her employment due to her gender.

46. Defendant has treated Plaintiff differently than similarly-situated male workers by, *inter alia*, not being allowed to wear similar work-suitable dress pants, by not being allowed to work with police officers or enter the homes of probationers and/or parolees and by making sexual advances toward her.

47. Defendant's conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

48. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered monetary and non-monetary damages including loss of back pay, loss of front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

### Count IV—Wrongful Discharge in Violation of Virginia Public Policy
### (*Bowman v. State Bank of Keysville*)

49. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Seven as if set out in full herein.

50. Virginia common law recognizes wrongful discharge claims in violation of public policy, *inter alia*, when the discharge was based upon an employee's refusal to engage in a criminal act.

51. On or about March 10, 2016, Defendant, by and through Grant, sought to have Plaintiff draft, sign and issue a sworn violation report containing statements which she did not believe was true, in criminal violation of Virginia's perjury statute. *See* Va. Code § 18.2-434.

52. Plaintiff refused to commit a crime by refusing to draft, sign and issue a sworn violation report containing statements that she did not believe to be true.

53. On or about March 11, 2016, Grant, acting with the authority of his supervisory position with Defendant, made sexual advances toward Plaintiff, while both he and Plaintiff were married to others, for the purpose of using his authority to pressure Plaintiff into having adulterous sexual relations with him, which Plaintiff refused and rebuffed.

54. Had Plaintiff assented to and accepted Grant's sexual advances and had sexual relations with him, she would have been committing criminal adultery and/or aiding and abetting criminal adultery. *See* Va. Code § 18.2-365.

55. Plaintiff refused to commit a crime by refusing to engage in adulterous sexual relations with Grant and by refusing to aid and abet his engagement in criminal adultery.

56. Defendant wrongfully discharged Plaintiff in violation of the public policy of Virginia due to her refusal to engage in the criminal acts described herein.

57. Defendant's conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

58. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered monetary and non-monetary damages including loss of back pay, loss of front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

WHEREFORE, the Plaintiff, Danielle L. Kramer O'Mara, by counsel, prays that this honorable Court grant her relief as against the Defendant including but not limited to:

    a. past lost wages and benefits;

    b. future lost wages and benefits;

    c. compensatory damages;

d. punitive damages;

e. pre- and post-judgment interest;

f. attorney's fees and litigation costs; and

g. such other relief as deemed just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: *August 10, 2016*

Respectfully Submitted:

Steven B. Wiley (VSB No. 47531)
WILEY LAW OFFICES, PLLC
440 Monticello Ave., Suite 1817
Norfolk, Virginia 23510
(757) 955-8455
(757) 319-4089 facsimile
swiley@wileylawoffices.com

Todd M. Gaynor (VSB No. 47742)
GAYNOR LAW CENTER, P. C.
440 Monticello Ave., Suite 1800
Norfolk, Virginia 23510
(757) 828-3739
(757) 257-3674 facsimile
tgaynor@gaynorlawcenter.com

*Attorneys for Plaintiff*